FILED
 2006 Dec-28  AM 09:45
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION

LIZARDO OCHOA,                  }
                                }
    Plaintiff,                  }
                                }     CIVIL ACTION NO.
v.                              }     06-AR-0002-S
                                }
OPHTHALMOLOGY SERVICES          }
FOUNDATION, et al.,             }
                                }
    Defendant.                  }
```

**MEMORANDUM OPINION**

Before the court are the respective motions of defendant Board of Trustees of the University of Alabama ("Board") and defendant University of Alabama Ophthalmology Services Foundation ("OSF") (together, "defendants"), for summary judgment on the above-entitled action brought by plaintiff Lizardo Ochoa ("Ochoa"), under Title VII of the Civil Rights Act of 1964 for national-origin discrimination. For the reasons that follow, the court will grant both the Board's motion and OSF's motion.

*Facts*

OSF is the entity under the auspices of which the faculty of the University of Alabama-Birmingham's ("UAB") Department of Ophthalmology provides eye care. It employs between 10 and 15 optometrists and ophthalmologists. The Board was created by the Alabama Constitution as the organization which determines the policies of the University of Alabama System. The University of Alabama System includes the University of Alabama, the University

of Alabama in Huntsville, and UAB. The Board consists of 15 elected members and two ex-officio members. Ochoa is a male Colombian native. For aught appearing he is a legal resident of the United States. He received a bachelor of optometry degree in 1989 from the National Polytechnic Institute in Mexico City, an associate's degree in science vision care technology/opticianry from Miami Dade Community College in June 1999, and a doctor of optometry degree from the American University of Puerto Rico in June 1993. Although he is not yet a licensed optometrist, he has passed two of the three parts of the optometry board exams.

In August 2004, Ochoa saw a job advertisement placed by OSF in *The Birmingham News*, for an ophthalmic/optometric technician position at the UAB Department of Ophthalmology. The prospective employee would assist Dr. Carol Rosensteil ("Rosensteil"), an optometrist at OSF. Rosensteil has a specialty practice in which between 30% and 40% of her contact-lense patients wear rigid contact lenses. On August 16, 2004, Ochoa went to the office address listed in the newspaper ad and asked to see the manager to apply for the position. Ochoa interviewed for the position on that same day with Sheffield Young ("Young"), OSF's Practice Manager, and Rosenstiel. Together, Young and Rosenstiel were responsible for making the hiring decision for the ophthalmic/optometric technician position.

Ochoa first interviewed with Young only.  Before the interview started, Ochoa gave Young copies of his optometry-school diploma and his resume.  On his resume, Ochoa listed as references Dr. Meet Chande and Dr. Wanty Chang, two of his optometry-school classmates.  Although Young told Ochoa that his resume and diploma indicated that he was qualified for the ophthalmic/optometric technician position, Ochoa had worked in the optometry field for only five months after he completed the education and training leading to his doctor of optometry degree.  In those five months, Ochoa worked for an optometrist conducting eye exams, fitting contact lenses, and diagnosing and managing ocular diseases.  While working for this optometrist, Ochoa occasionally fitted rigid contact lenses, but most of his fittings were done for patients who wore soft contact lenses.

After Young determined that Ochoa was qualified for the ophthalmic/optometric technician job, he asked Rosenstiel to join the interview.  Rosenstiel spoke to Ochoa for roughly 15 minutes, during which time she asked Ochoa questions about his experience fitting patients with contact lenses.  Ochoa responded that he was comfortable fitting both soft and rigid contact lenses, but that he did not have "too much experience" fitting rigid lenses.  In the middle of the interview, Rosenstiel said that Ochoa was qualified for the position.  She then remarked that "we are going to have

trouble working you and me because it's a language barrier" (herein, the "language-barrier comment").

At the end of the interview, Rosenstiel asked Ochoa to provide references from past professors.  OSF always checks a candidate's references before it extends a job offer, and Rosenstiel asked Ochoa for professor references because she wanted to speak with someone who could evaluate Ochoa's work.  Rosentstiel believed that professor references would be sufficient for this purpose, but that a optometry-school peer references would not.  Two days later, on August 18, 2004, Ochoa faxed to OSF the telephone numbers and email addresses for two past professors, Dr. Galarza and Dr. Ramirez.  This was the last contact Ochoa had with anyone at OSF.

On August 19, 2004, Young sent emails to both Galarza and Ramirez, asking them to provide information concerning Ochoa's clinical skills, success as a student, and interaction with patients.  In the emails, Young specifically asked the professors whether they "would say [Ochoa] was in the top 10%, 20%, or 50% of his class."  Neither Galarza nor Ramirez responded to Young's emails, and Young's email to Galarza was returned as undeliverable.  Neither Young, Rosenstiel, nor anyone else at OSF attempted to contact Ochoa after Ochoa faxed his list of professor references to OSF on August 18, 2004, and Ochoa did not follow up on his application or otherwise attempt to contact OSF after sent the fax.

On August, 31, 2004 OSF hired Bonnie Ferguson ("Ferguson"), a white female of American origin, for the ophthalmic/optometric technician job that was advertised in *The Birmingham News*. When Ferguson interviewed for the position in August 2004, she had over four years of experience as a technician and had a significant amount of rigid-contact-lens experience. She had also provided a reference from an optometrist for whom she previously worked, and Rosenstiel had successfully verified this reference before OSF hired her. On September 2, 2004, OSF hired Jamie Crockett ("Crockett"), who is white and of American origin, to fill a different technician position than the one for which Ochoa applied and for which Ferguson was hired. Young does not specifically remember who Crockett's references were or whether he or someone else at OSF verified them before OSF offered Crockett the job.

*Summary Judgment Standard*

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The court may enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s]

whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted). This determination involves applying substantive law to the relevant facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence. *See id.* at 248; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

*Analysis*

Ochoa contends that OSF and the Board discriminated against him because of his national origin when it declined to hire him. In order to succeed on this claim, Ochoa must establish a *prima facie* showing of discriminatory intent through direct, circumstantial, or statistical evidence. *See Cooper v. Southern Co.*, 390 F.3d 695, 723-25 (11th Cir. 2004). Ochoa attempts to support his claim using both direct and circumstantial evidence. The Board and OSF both contend that Ochoa's *prima facie* case fails based on the undisputed evidence, and that they are entitled to summary judgment.

**A. Direct Evidence**

Ochoa characterizes the following as direct evidence of defendants' discriminatory intent: (1) Rosenstiel's language-barrier comment; (2) Ochoa's testimony regarding Rosenstiel's language-barrier comment; and (3) OSF's EEOC position statement.

6

*See* Pla.'s Opp. to OSF's Mot. for Summ. J. (Doc. No. 29), at 14. The court respectfully disagrees with Ochoa's contention that there exists direct evidence of discriminatory intent.

Direct evidence is "evidence which, if believed, proves the existence of the fact in issue without inference or presumption." *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999) (citations omitted) (emphasis added).  "Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence."  *Id.*; *see also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (finding that statements that require inference or presumption to be construed as discriminatory cannot constitute direct evidence, but can constitute circumstantial evidence).  Neither Rosenstiel's comment to Ochoa during the interview nor Ochoa's testimony about Rosenstiel's comment can meet this standard.  Indeed, "direct evidence is comprised of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Cooper*, 390 F.3d at 724 n.15.  If the innocuous statements Ochoa points to were to be considered blatant remarks of bigotry or discrimination, commerce would likely shut down altogether, because employers would be in constant fear of violating Title VII every time they or their managers made a remark.  The court will consider Rosensteil's comment as possible

circumstantial evidence of discrimination, but not as direct evidence.

As for OSF's purported EEOC position statement, Ochoa has not pointed to any evidence that suggests he filed an EEOC charge or that OSF responded to one. The court will therefore not consider this mysterious EEOC position statement, either as direct evidence or as circumstantial evidence.

### B. Circumstantial Evidence

Because Ochoa cannot establish the required *prima facie* showing with direct evidence and does not attempt to establish it with statistical evidence, he must demonstrate that he can establish a circumstantial *prima facie* showing of discriminatory intent under the *McDonnell Douglas* framework in order to avoid summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Ochoa must show (1) that he is a person of foreign national origin, (2) that he applied and was qualified for which OSF or the Board was seeking applicants, (3) that, despite his qualifications, he was rejected, and (4) that, after his rejection, the position remained open and OSF or the Board continued to seek applicants from persons of Ochoa's qualifications. *See id*; *Panlilo v. Dallas Independent School District*, 643 F.2d 315, 317 (5th Cir. 1981). If Ochoa can establish this circumstantial *prima facie* showing of discrimination based on national origin, the burden shifts back to defendants to

articulate a legitimate nondiscriminatory reason for not hiring him. *Id.* If defendants are able to meet this burden, Ochoa must come forward with evidence sufficient to permit a reasonable fact finder to conclude that defendants' stated reason was actually a pretext for unlawful discrimination. *Cooper*, 390 F.3d at 725.

As a preliminary matter, the undisputed evidence reveals that the Board was not soliciting applicants for the job for which Ochoa applied. OSF and the Board are separate entities, and it was OSF that was seeking applicants for the technician position, not the Board. Ochoa cannot establish the second element of his circumstantial *prima facie* case against the Board, and his action against the Board must accordingly be dismissed. Even if Ochoa could establish a circumstantial *prima facie* case vis-a-vis the Board, his action against the Board would be dismissed for the reasons set forth below with respect to OSF.

Regarding Ochoa's action against OSF, the court is satisfied that Ochoa can establish that he enjoys the protection of Title VII as being of foreign national origin, that he applied and was qualified for the advertised technician position, and that despite his qualifications, he was not hired for the position. Given that Ferguson was hired for the ophthalmic/optometric technician position only 15 days after Ochoa applied for it, whether Ochoa can establish that the position remained open or that OSF continued to seek applicants for the position after it rejected Ochoa could be

a close question, and the court will give Ochoa the benefit of the doubt on it at the summary-judgment stage.[1]  The court cannot conclude based on the evidence submitted to date that Ochoa cannot make his *prima facie* showing of discrimination.

The inquiry for purposes of OSF's summary-judgment motion thus boils down to two steps:  First, has OSF articulated a legitimate, nondiscriminatory reason for not hiring Ochoa?  Second, if so, has Ochoa offered any evidence to create a genuine issue of material fact as to whether OSF's stated reason (or reasons) was pretextual?

**1.   OSF's Articulation of a Legitimate, Nondiscriminatory Reason for Not Hiring Ochoa**

The first step of the inquiry must be answered in the affirmative.  OSF maintains that it did not hire Ochoa because (1) it was unable to verify Ochoa's references, and (2) Ferguson was a more qualified candidate because of her experience fitting rigid contact lenses.  Whether English proficiency could be a tie-breaker between qualified applicants, one of whom is of foreign origin and the other of whom is American, is a question that need not be answered in this case because OSF has not articulated it as a legitimate reason for not hiring Ochoa or for choosing to hire Ferguson instead of Ochoa.

---

[1] Ochoa accuses OSF of failing to hire him for any position with OSF even though OSF's policy is to keep an application on file for six months.  The only position relevant for purposes of Ochoa's *prima facie* case, however, is the technician position advertised in *The Birmingham News* for which Ochoa unsuccessfully applied and interviewed, and for which OSF hired Ferguson on August 31, 2004.

OSF's burden to articulate a legitimate, nondiscriminatory reason for not hiring Ochoa is one of production, and is "exceedingly light."  *Cooper*, 390 F.3d at 724.  To meet it, OSF "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981)).  OSF's stated reasons meet this standard.  It is undisputed that Ferguson had significantly more experience fitting rigid contact lenses than Ochoa did, and that a significant portion of Rosenstiel's practice involved fitting rigid contact lenses.  Moreover, it is undisputed that OSF attempted to verify Ochoa's references but was unsuccessful in doing so.  OSF has met its burden of production.

## 2. Whether OSF's Stated Reason Was a Pretext for Unlawful Discrimination

Most of the heavy lifting in this analysis involves the issue of pretext.  In order to avoid summary judgment, Ochoa must come forward with evidence sufficient to permit a reasonable fact finder to conclude that OSF's articulated, legitimate, nondiscriminatory reasons for not hiring him were not its true reasons, but were rather pretexts for unlawful discrimination.  *Combs*, 106 F.3d at 1528.  Ochoa must produce sufficient evidence to create a genuine issue of material fact with respect to both of OSF's articulated

11

reasons. *See Cooper*, 390 F.3d at 725. Ochoa makes the following assertions, and characterizes them as evidence that OSF's stated reasons for not hiring him were pretextual:

1. Rosenstiel said during Ochoa's interview that "we are going to have trouble working you and me because it's a language barrier."
2. Ochoa had earned a doctor of optometry degree when he interviewed for the ophthalmic/optometric technician job, and was therefore a better qualified candidate than Ferguson.
3. On September 2, 2004, OSF hired Crockett, who is American, for a different technician position than the one for which Ochoa applied. Regarding Crockett, Young testified that "I recall him being in optometry school and dropping out of optometry school. I don't recall prior to optometry school what his background was."
4. Young did not ask Crockett to provide teacher or professor references.
5. Young does not know if Crockett was in the top ten, twenty, or fifty percent of his optometry-school class.
6. Young does not recall whether Crockett had any experience working as a technician or whether Crockett had any optical experience.
7. Young told Ochoa that he was more than qualified for the ophthalmic/optometric technician job.

8.  Young believed that Ochoa was a good candidate and qualified for the ophthalmic/optometric technician job.

9.  Young told Rosenstiel that Ochoa was a good candidate for the ophthalmic/optometric technician job.

10. Rosenstiel felt like Ochoa had enough experience to do the job and that Ochoa was bright and capable.  While Ochoa did not have the level of experience Rosenstiel had hoped for, Rosenstiel had hired people with less experience before.

11. Rosenstiel felt that Ochoa being a doctor of optometry could potentially work in Ochoa's favor.

Ochoa does not say which of OSF's two stated reasons for not hiring him is discredited by his various assertions.  Aside from reciting the Eleventh Circuit's opinion that "[t]he test is whether the disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question"[2] after his second assertion, Ochoa simply lists as bullet points "issues of fact" 2 through 11 above.  He does not explain how they constitute evidence of pretext, but instead merely concludes hopefully that "[w]herefore in light of the aforesaid it is clear that a genuine of material fact as to Plaintiff's claims that the Defendant failed to hire him because of his race and

---

[2] *Higgins v. Tyson Foods, Inc.*, 2006 U.S. App. LEXIS 21962 (11th Cir. Aug. 28, 2006).

13

National Origin, and therefore Defendant's Motion for Summary Judgment is due to be denied" [sic].

Ochoa not having attempted to explain how his "issues of fact" discredit OSF's two proffered reasons for not hiring him, the court is left to evaluating them in a vacuum. The court will nevertheless try.

### a. OSF's first stated nondiscriminatory reason for not hiring Ochoa: OSF was unable to verify Ochoa's references

The parties agree that OSF attempted to contact Ochoa's references, but that this attempt was unsuccessful. Nevertheless, Ochoa contends OSF's first stated reason for not hiring him was a pretext for unlawful discrimination. The court finds that none of Ochoa's assertions amount to genuine issues of material fact that could establish that OSF's first stated reason for declining to hire him was pretextual.

First, Rosenstiel's language-barrier comment ("issue of fact" number 1) cannot discredit OSF's first stated nondiscriminatory reason for not hiring Ochoa. "Whether comments standing alone show pretext depends on whether their substance, context, and timing could permit a finding that the comments are causally related to the adverse employment action at issue." *Herawi v. State of Alabama Dep't of Forensic Sciences*, 311 F. Supp. 2d 1335, 1348 (M.D. Ala. 2004). Rosenstiel's comment, in which he told Ochoa that "we are going to have trouble working you and me because it's a language barrier," does nothing to demonstrate pretext on behalf

of him or OSF. Considering the context and timing in which the comment was made – *i.e.*, that Young tried to verify Ochoa's references **after** he and Rosenstiel interviewed Ochoa – Rosenstiel's comment cannot function as circumstantial evidence of pretext.

Second, that OSF did not ask Crockett to provide teacher references ("issue of fact" number 4) cannot establish that OSF's first stated reason was a pretext for unlawful discrimination. It is undisputed that OSF always checks references, that it has never hired a candidate without checking references, and that it attempted to check Ochoa's references but was unsuccessful. OSF did verify the references that Crockett provided, and it was not able to verify those of Ochoa despite Young's attempt to do so. Similarly, that OSF did not ask Crockett or Crockett's references the same questions it asked Ochoa's references cannot constitute evidence of pretext. OSF does not claim to ask all applicants' references, regardless of the positions for which the respective applicants apply, the exact same questions before making a hiring decision.

Finally, Ochoa's "issue of fact" numbers 2, 3, 6, 7, 8, 9, 10, and 11 cannot demonstrate that OSF's first stated reason for not hiring him was pretextual. The court cannot imagine any way in which any of these assertions show evidence of pretext with respect to OSF's explanation that it did not hire Ochoa because it could not verify his references.

In summary, even if the court views the identified "issues of fact" in a light most favorable to Ochoa, Ochoa has failed to present evidence sufficient to permit a reasonable fact finder to disbelieve OSF's proffered nondiscriminatory explanation that it did not hire him because it could not verify his references. For this reason alone, OSF's motion for summary judgment is due to be granted.

### b. OSF's second stated nondiscriminatory reason for not hiring Ochoa: Ferguson was a more qualified candidate

Although he court need not address whether Ochoa can demonstrate that OSF's second proffered nondiscriminatory reason for not hiring him was pretextual because Ochoa cannot discredit OSF's first stated reason, it will do so in the interest of completeness. Ochoa does not deny that he lacked experience fitting rigid contact lenses as compared to Ferguson, and he does not deny that a significant part of the technician position for which he interviewed involved fitting rigid contact lenses. Instead, he believes that "issues of fact" 1 through 11 constitute evidence that OSF's second stated reason for not hiring him was a pretext for unlawful discrimination. The court respectfully disagrees.

First, Rosenstiel's language-barrier comment ("issue of fact" number 1) cannot constitute circumstantial evidence of pretext with respect to OSF's second stated nondiscriminatory reason for not hiring Ochoa. Even after she made the comment during Ochoa's

16

interview, Rosenstiel considered Ochoa to be a qualified candidate for the position and OSF attempted to contact Ochoa's references. Given the timing and context of the comment, and considering the actions OSF took after Rosensteil made it, no reasonable fact finder could consider the comment to be evidence that OSF's second stated nondiscriminatory reason for not hiring Ochoa was pretextual.

Second, that Ochoa has a doctor of optometry degree ("issue of fact" number 2) cannot constitute evidence of pretext. Ochoa's argument is that he has a doctor of optometry degree and Ferguson does not, so he must have been more qualified for the technician position than Ferguson. Unfortunately for Ochoa, the authority on which he relies to support his argument calls for the exact opposite result from the one he urges. As Ochoa points out, "[t]he test is whether the disparities in qualifications are of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Higgins v. Tyson Foods, Inc.*, 2006 U.S. App. LEXIS 21962 (11th Cir. Aug. 28, 2006). Applying this standard, no reasonable fact finder could find that the differences in Ochoa's and Ferguson's qualifications **demanded** that OSF hire Ochoa over Ferguson. The technician job OSF advertised in *The Birmingham News* did not require a candidate to have a doctor of optometry degree, but OSF did want to fill the

position with someone with rigid contact lens experience.  Just as it would be reasonable for a lawyer to hire as her assistant an experienced legal secretary instead of a fellow lawyer who has little or no relevant experience, it was entirely reasonable for OSF to have hired the more experienced but less credentialed Ferguson for the ophthalmic/optometric technician position.

Third, that OSF hired Crockett, a white American, for a different technician position than that for which Ochoa applied, that OSF did not produce Crockett's job application or resume, and that Young recalled that Crockett dropped out of optometry school ("issue of fact" number 3), cannot constitute circumstantial evidence of pretext with respect to OSF's belief that Ferguson was a better qualified candidate than Ochoa.  Ochoa applied for the job that was eventually offered to Ferguson, not the job OSF offered to Crockett.

Fourth, Young's and Rosenstiel's statements and thoughts indicating that they felt Ochoa had sufficient qualifications and experience for the ophthalmic/optometric technician position ("issues of fact" numbers 7, 8, 9, 10, and 11) fail as possible evidence of pretext.  That Ochoa was qualified for the job is part of his *prima facie* case of discrimination, and OSF concedes it.  But to suggest that since Ochoa was qualified for the job at all, he therefore must have been **more** qualified than Ferguson, is a peculiar and illogical argument.

Fifth, and finally, even if it gives Ochoa the benefit of every last doubt and strains to interpret the evidence as broadly as possible, the court is unable to see how Ochoa's "issue of fact" numbers 4, 5, and 6 could possibly establish that OSF's second stated reason for not hiring him was pretextual.  Accordingly, Ochoa has not identified any evidence which could discredit OSF's second stated nondiscriminatory reason for declining to hire him.

*Conclusion*

For the foregoing reasons, the Board's and OSF's motions for summary judgment will be granted.

DONE this 27th day of December, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE